THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CRISTÓBAL LAMBOY, Defendant and Appellant.

No. 8789. Argued July 15, 1941.—Decided July 21, 1941.

*Francisco Torres Aguiar* for appellant. *Emilio de Aldrey, Acting Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

In the information filed against the defendant and appellant on May 13, 1940, he was charged with the abandonment of his minor son, José Antonio Lamboy, by failing to provide the latter with the necessary food and clothing for his living and welfare. He was sentenced to one month in jail, but the sentence was suspended provided he would pay an allowance of one dollar weekly to his son. Feeling aggrieved by that judgment, the defendant appealed. In support of his appeal, he urges: That the lower court lacked jurisdiction to take cognizance of the case; that the information does not state facts sufficient to constitute a public offense; that the evidence is insufficient to support the judgment; and that the court was moved by passion, prejudice, and partiality in failing to properly consider the evidence for the defendant.

Had the District Court of San Juan jurisdiction to take cognizance of the case and to enter the judgment appealed from? If not, it will be unnecessary to consider the other questions raised by the appellant.

The judgment was rendered on September 25, 1940. On April 30, 1940, the Legislative Assembly of Puerto Rico passed Act No. 108, entitled: "An Act to grant maintenance to illegitimate children, whether acknowledged or not; to determine the responsibility of the parents; to establish the procedure and penalties for noncompliance therewith,

and for other purposes." The act went into effect ninety days after its approval, that is, on July 29, 1940.

Said Act No. 108, *supra,* essentially provides as follows:

By its first section the obligation is imposed first on the father and then on the mother to feed, clothe, support, educate and provide shelter for their illegitimate children *under sixteen years of age,* whether acknowledged or not.

Section 2 prescribes that the party who fails in that obligation "or wilfully refuses to fulfill it and persists in his or her refusal after a formal demand to do so has been made," shall be punished as provided for in the Penal Code.

Section 3 provides that the formal demand shall be ordered by the municipal judge of the municipality where the parents reside, on a written application sworn to by any person having the minor under his care.

It is provided in section 4 that within 8 days following the formal demand, the person on whom such formal demand is made shall appear before the judge who made it "and shall admit or deny the paternity." If he should admit it, a record shall be made of the obligation contracted by such person regarding the minor.

Section 5 provides that if after the appearance and admission of the paternity by the presumptive father or mother he or she should fail to comply with his or her obligation towards the minor, the municipal judge shall send the papers to the juvenile court of the district where the minor resides. The judge thereof, if in his opinion probable cause exists, shall order the proper complaint to be filed against the presumptive father and shall proceed to try the case in accordance with the procedure established in the Code of Criminal Procedure. It is further provided in section 5 that "the jurisdiction of the juvenile courts shall be exclusively to take cognizance of the cases included under this Act," and that appeals from its judgments may be taken to the Supreme Court.

It is provided in section 6 that when a father or a mother *who has admitted the paternity of the minor* has been sentenced *for having failed to fulfill his or her obligations towards the child,* the judge may suspend judgment, pursuant to Section 263 of the Penal Code.

When the complaint was filed on May 13, 1940, the new law had not yet become effective, although it was already in force on September 21, 1940, when the defendant appeared in the district court, was arraigned, entered in plea of not guilty, and was tried, convicted, and sentenced.

Section 263 of the Penal Code, as amended by Act No. 35 of April 24, 1931, provides that:

"Every parent of any legitimate, legitimated, natural, or acknowledged illegitimate and adopted child who wilfully omits, without lawful excuse, to perform any duty imposed upon him by law or to furnish necessary food, clothing or medical attendance to such child is guilty of a *misdemeanor; Provided,* etc."

In accordance with the clear provisions of the above-quoted section, any father or mother who has failed to perform his or her obligations towards a minor child could be charged, tried, and convicted without the necessity of complying with any prerequisite. Section 2 of Act No. 108 of 1940 amends Section 263 of the Penal Code in so far as concerns illegitimate children, by providing that "he who fails in that obligation or wilfully refuses to fulfill it and persists in his or her refusal *after a formal demand to do so has been made*" shall be punished as provided for in the Penal Code. It has been the evident intent of the lawmaker to accord a father who has abandoned an illegitimate child under 16 years of age a last opportunity to fulfill his duties and to avoid criminal proceedings for a violation of Section 263 of the Penal Code. From the moment that Act No. 108 of 1940 became effective no presumptive father can be prosecuted and punished for abandonment of his minor child, unless he has been first formally required, in the manner prescribed in section 4

thereof, to state whether or not he admits the paternity and sets forth in writing what he binds himself to do for the benefit of the minor. If after being so required he appears before the municipal judge and admits the paternity, such admission places him *ipso facto* within the jurisdiction of the junevile court; and if after such admission and after having bound himself to support the minor he should refuse to provide the necessaries for the welfare of the minor, then and only then can the father be tried and convicted, in accordance with the provisions of Section 263 of the Penal Code, by an ordinary court with jurisdiction to take cognizance of the case. So long as no compliance has been had first with such formal demand, the presumptive father of the minor can not be held to have violated the law. In other words, the cause of action accrues when, after such demand is made upon him, the father refuses to admit the paternity.

At the time of the appearance of the defendant on September 21, 1940, Act No. 108 was already in force. As the act in question favored the defendant, the latter was entitled to request that he should not be tried or convicted, without being first accorded an opportunity to admit the paternity of the minor or to reject it. As no compliance was had with the requisite of the presumptive father being first served with the formal demand, the district court which convicted him was without jurisdiction to try him. See *Ball* v. *Tolman*, 135 Cal. 375; Sutherland, Statutory Construction, sec. 166; and *People* v. *Pérez*, 52 P.R.R. 161.

 There is no merit in the contention of the prosecuting attorney, that the jurisdictional question should be dismissed, as it was raised for the first time in the trial *de novo* before the district court, after hearing the evidence for the prosecution, and was not raised by a demurrer to the information. The objection of want of jurisdiction is a privileged one and may be raised at any time, especially where the lack of jurisdiction appears from the evidence for the

prosecution, as was the case here. The information failed to allege the status of the minor. If from the evidence it appeared that he was a legitimate son, the court then had jurisdiction under Section 263 of the Penal Code. If, on the contrary, the evidence showed, as it did, that an illegitimate son was involved, then Act No. 108 of 1940 was applicable, and as its provisions had not been complied with the court failed to acquire jurisdiction.

 Nor do we agree with the contention of the prosecuting attorney to the effect that the plea of not guilty entered by the defendant upon his arraignment, is equivalent to a denial of the paternity required for conferring jurisdiction upon the district court which convicted him. A plea of not guilty can not be construed as amounting to a denial of the paternity, inasmuch as the rejection of the paternity that converts the father of the illegitimate son into a transgressor of the law and vests the municipal and district courts with jurisdiction to try him, is the one made before a municipal judge within the eight days following the formal demand and before a complaint is filed.

For the reasons stated the judgment must be reversed and the defendant and appellant discharged.